Jim EVANS, Appellant (Defendant),

v.

PIONEER BANK OF EVANSTON, WYOMING, Appellee (Plaintiff).

No. 90–148.

Supreme Court of Wyoming.

April 12, 1991.

John A. Thomas of Phillips, Lancaster & Thomas, P.C., Evanston, for appellant.

William D. Bagley, Cheyenne, for appellee.

Before THOMAS, CARDINE, MACY and GOLDEN, JJ., and BROWN, Ret. J., (Retired).

BROWN, Justice, Retired.

Appellant Jim Evans, a partner in Environmental Safeguards, a Wyoming partnership, appeals from the trial court's determination that the Environmental Safeguards' promissory note to appellee Pioneer Bank of Evanston was a partnership obligation and that, as a partner, appellant is individually liable for that partnership debt.

On appeal, appellant raises two issues:

## I

Whether the judgment of the district court was clearly erroneous and based on insufficient evidence in that it found that the signature of only one managing partner bound the other partners even though the appellee had knowledge of the restriction in the partnership agreement requiring the consent of all managing partners in order to borrow money?

## II

Whether the trial court abused its discretion in awarding attorney's fees to appellee where no evidence was presented as to the method of calculation nor the reasonableness of such fees?

We reverse.

On May 31, 1984, Ronald Bolin executed a promissory note to Pioneer Bank of Evanston, Wyoming (Bank) in the amount of $35,000. Above Bolin's signature is the name "Environmental Safeguards."

The Partnership Agreement stated that Ronald J. Bolin (Ronald) and Dee A. Bolin (Dee) were the managing partners. Additionally, appellant and three others were named as partners. Payments were made on the note and when default occurred on June 22, 1987, there was a balance due of $18,803.71 plus interest.

The statute applicable to this case provides:

(a) Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

\* \* \*

(d) No act of a partner in contravention of a restriction on his authority shall bind the partnership to persons having knowledge of the restriction.

W.S. 17–13–301 (Dec.1989 Repl.)

The court said in *Stone v. First Wyoming Bank N.A.—Lusk*, 625 F.2d 332, 343 (10th Cir.1980):

We have already noted that a partner is an agent for the partnership and may bind the partnership when acting within the scope of the partnership business "unless the partner has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no authority." Wyo.Stat. § 17–13–301(a). Whenever a person deals with an agent knowing that the agent is authorized to act on behalf of the partnership by virtue of a power of attorney, then the person is bound to ascertain and know the character and extent of the power of attorney under which the agent assumes to act. *See*

*De–Boer Constr., Inc. v. Reliance Ins. Co.,* 540 F.2d 486, 490 (10th Cir. [1976]), *cert. denied* 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 [(1977)]; *Chicago Title Ins. Co. v. Progressive Housing, Inc.,* 453 F.Supp. 1103, 1107 (D.Colo. [1978]); *see also* Restatement (Second) of Agency § 167 (1958). Moreover, if the person has knowledge that the agent has limited authority, then he may not rely on the theory of apparent authority to enforce liability against the partnership. *See De–Boer Constr., Inc. v. Reliance Ins. Co., supra* 540 F.2d at 491; *cf. Cross v. Amoretti,* 44 Wyo. 175, 9 P.2d 147, 148–149 [(1932)].

59A Am.Jur.2d *Partnership* § 267 (1987) states:

The Uniform Partnership Act states that no act of a partner in contravention of a restriction on authority will bind the partnership to persons having knowledge of the restriction. Agreements and restrictions affecting the agency of partners are binding not only as between the partners themselves but also as to those who have notice of private agreements between partners affecting their powers, where the other parties have such notice at the time of entering into dealings with the partnership. Thus, a creditor or obligee who chooses to accept express limitations on the liability of partners, contrary to the general nature of partnership obligations and liability, cannot thereafter deny his choice. The rule also applies to third parties who have knowledge of facts or circumstances sufficient to lead a man of common prudence to inquire as to whether restrictions exist.

Appellant contends that the promissory note involved here was not a legal obligation of the partnership because only one of the managing partners signed it. In support of his contention, he brings to our attention Paragraph 7 of the Partnership Agreement.[1] Appellee bank had in its possession a copy of the Partnership Agreement when the promissory note was executed. Appellant contends that the bank was charged with the limitation on authority set out in Paragraph 7 of that agreement. Appellee contended at trial and on appeal that the consent of all managing partners was not necessary to impose a legal obligation on the partnership. The trial judge rejected that theory and ruled that the consent of the other managing partner, Dee A. Bolin, was necessary.

Appellee relies on a single sentence of the agreement to support its contention that only one managing partner's signature was necessary to bind the partnership on the promissory note. This sentence provides: "Any managing partner shall have the right to draw checks ·upon any bank account of the partnership, and to make, deliver, and accept commercial paper in connection with the business of the partnership." It appears that authority of a *single* managing partner with respect to routine business is set out in this sentence. With respect to borrowing money or extraordinary commercial paper, however, authority is limited by the next sentence in the agreement:

*with the business of the partnership. Except with the consent of all the managing partners, no partner shall on behalf of the partnership borrow or lend money, or make deliver, or accept an extraordinary commercial paper, or execute any mortgage, security agreement, bond, or lease, or purchase or contract to purchase, or sell or contract to sell any property for or of the partnership, other than the type of property bought and sold in the regular course of its business.* No partner shall, except with the consent of the other partners, assign mortgage, grant a security interest in, or sell his share in the partnership or in its capital assets or property, or enter into any agreement as a result of which any person shall become interested with him in the partnership.

1. Paragraph 7 of the Partnership Agreement (emphasis added) reads:

The managing partners shall be *Ronald J. and Dee A. Bolin.* Dee shall be the office manager and shall attend to all details relating thereto, devoting so much time as is necessary to the conduct of this department. Ronald shall manage the field, have full control of production matters, and shall direct sales promotion activities and shall devote his entire time to this work. Non-managing partners shall have no voice in the management of the partnership business and need devote no time thereto. *Any managing partner shall have the right to draw checks upon any bank account of the partnership, and to make, deliver, and accept commercial paper in connection*

Except with the consent of all the managing partners, no partner shall on behalf of the partnership borrow or lend money, or make deliver, or accept any extraordinary commercial paper, or execute any mortgage, security agreement, bond, or lease, or purchase or contract to purchase, or sell or contract to sell any property for or of the partnership, other than the type of property bought and sold in the regular course of its business.

In construing Paragraph 7 of the Partnership Agreement, the trial court said:

I read the Partnership Agreement to have two references to commercial transactions, one being a general reference and the other one being a more specific reference.

* * *

I read the Partnership Agreement as saying that with respect to commercial paper, any managing partner shall have the right to draw checks upon any bank account of the partnership and to make, deliver and accept commercial paper in connection with the business of the partnership. But then the next paragraph [sentence] becomes specific about borrowing and lending money.

We agree with the trial court's construction of Paragraph 7 of the Partnership Agreement.

Appellee contended at trial and on appeal that nonconsent was an affirmative defense and that appellant had the burden to prove that the other managing partner, Dee, did not consent to the execution of the promissory note. The trial court disagreed and stated:

[I]t would seem to me that if the bank had no knowledge of a provision that except with the consent of all the managing partners who made this note, that then the avoidance does become an affirmative defense that must be proved by the Defendant—by the Defendants. But in a situation where the bank knows that there is some limitation on authority, then I think it—that it does not have to be raised by the Defense but, instead, it becomes a matter of proving—of the bank proving that having knowledge of

the limitation, we can nevertheless bind nonsignatory partners because we obtained the consent in advance.

The trial court's determination that appellee bank had the burden to prove that Dee consented to the execution of the promissory note is a correct allocation of the burden of proof. The burden of establishing requisite authority rests upon the one who asserts it. *Schoonover v. Carpet World, Inc.*, 91 Wash.2d 173, 588 P.2d 729 (1978). In the circumstances here the bank asserted that Dee consented to the execution of the note; the burden, therefore, was on the bank to prove the consent. *See also Czapla v. Grieves*, 549 P.2d 650, 653 (Wyo. 1976); *Murphy v. Smith Trailer Sales, Inc.*, 544 P.2d 1006, 1009 (Wyo.1976).

In the judgment, the court determined that "[a]ll the managing partners consented to the loan." We do not agree and find the evidence insufficient with respect to consent by Dee. Paragraph 7 of the Partnership Agreement states that Dee was the office manager and, according to the testimony, she and Ronald were husband and wife, living under the same roof. Dee was in charge of the bookwork and paperwork and payments were made on the promissory note. The court did not explain for the record or in the decision letter how it determined that Dee consented to the promissory note. In order to find consent, the trial court apparently made an inference upon an inference. From the meager evidence, the court apparently inferred that Dee knew about the note because she was the office manager. Dee was sued by the bank on the same note as in this case and allowed a default judgment to be entered against her. The court apparently next inferred that knowledge of the note together with her failure to object to the note amounted to her consent to its execution. We do not think failure to object in these circumstances is tantamount to consent.

In summary, we hold that the Partnership Agreement required that all managing partners consent to the promissory note and that appellee knew of this requirement. Because of appellee's knowledge of the limitation contained in the Partnership

Agreement, it had the burden to prove consent by all managing partners. Appellee failed in its burden of proof.

Because of our determination regarding the first issue, we need not consider the second issue.

Reversed.