[No. 24665-1-II.   Division Two.   August 25, 2000.]

THE CITY OF LAKEWOOD, *Appellant*, v. PIERCE COUNTY, *Respondent*.

*Daniel B. Heid, City Attorney*, for appellant.

*John W. Ladenburg, Prosecuting Attorney*, and *Douglas W. Vanscoy, Deputy*, for respondent.

ARMSTRONG, C.J. — McChord Air Force Base took possession of part of Woodbrook Road in Pierce County. Pierce County sued the federal government and was awarded a money judgment pursuant to 28 U.S.C. § 2409a. Two months before the United States paid the judgment, Lakewood voted to incorporate. The new City of Lakewood asked the County to either relinquish the money judgment to the City or improve the roads and intersections now located in the City and impacted by the closure of Woodbrook Road. The trial court granted summary judgment in favor of the County. The City appeals, arguing that the County holds the judgment proceeds in a constructive trust for the City. We affirm.

## FACTS

In 1992, the United States District Court quieted the County's title to Woodbrook Road. The United States had acquired the part of Woodbrook Road crossing McChord Air Force Base. Under 28 U.S.C. § 2409a(b), the United States chose to retain possession of Woodbrook Road. The County sued for damages, and the federal court granted a judgment for $3,817,266 against the United States. In his oral ruling, the United States District Court judge opined that the value of compensation was determined by the cost to improve other county roads due to the change in traffic caused by the closure of Woodbrook Road. The federal court specifically referred to the Thorne Lane interchange, the intersection of 146th and Murray, and the pedestrian pathway. The judgment, however, simply stated, "[t]he court finds total judgment to be in the amount of $3,817,266 in favor of [the County] and against the [United States]."

The United States appealed from the judgment, and the County filed a cross-appeal. In January 1995, the County

settled with the United States; the United States agreed to pay the judgment amount plus interest in return for the County dismissing its cross-appeal. Both parties met their obligations under the settlement agreement; a stipulated dismissal of the appeals was filed in February, and in May the United States paid the County $4,020,107.91, the total value of the judgment plus interest.

In March 1995, two months after the settlement agreement was signed, voters approved the incorporation of the City of Lakewood. The incorporation occurred in February 1996. The new City includes the roads and pathways impacted by the loss of Woodbrook Road.[1] The County has done no work on these roads and intersections since the City incorporated.

## ANALYSIS

### I. Standard of Review

■ The City appeals the order granting the County's motion for summary judgment. We review de novo an order granting summary judgment. *Wilson v. Steinbach*, 98 Wn. 2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Here, no facts are disputed; the question is one of law.

### II. Judgment

The City argues that we should look beyond the plain language of the judgment and review the federal court's oral opinion. According to the City, the federal judge's oral opinion explains what it intended by the money judgment. Although the dispute between the County and the United

---

[1] Upon incorporation, county roads become part of the incorporated city. RCW 35.02.180.

States was ultimately settled, the parties have not provided us with the settlement agreement and neither party argues that the agreement controls over the terms of the judgment.

■ The City urges us to consider the federal court's oral ruling and find that the need to improve existing roads imposes some form of duty on the County. We consider oral rulings only where the judgment is ambiguous. Here, it is not. *See State v. Eppens*, 30 Wn. App. 119, 126, 633 P.2d 92 (1981). The judgment states that "[t]he court finds total judgment to be in the amount of $3,817,266 in favor of [the County] and against the [United States]." The judgment contains no restrictions on the use of the money.

Compensation — Use of Judgment Proceeds

■ Under 28 U.S.C. § 2409a(b),[2] the United States may retain possession of Woodbrook Road as long as it pays the County "just compensation." "[T]he measure of compensation 'is the cost of providing any necessary substitutes. When no substitute facilities are necessary, it follows that no compensation is allowed.'" *Washington v. United States*, 214 F.2d 33, 39 (9th Cir. 1954) (quoting *United States v. City of N.Y.*, 168 F.2d 387, 389 (2d Cir. 1948)); *see also Franklin County v. United States*, 341 F.2d 106 (5th Cir. 1965). The precise test applied by the federal district court was:

> [N]o substantial compensation is due to the [County] if such other roads serve the municipality's requirements and needs in as adequate a manner and extent and with equal utility as such system would have provided had the facility in question not been condemned, so far as this is reasonably practical.

---

[2] 28 U.S.C. § 2409a(b) states:

The United States shall not be disturbed in possession or control of any real property involved in any action under this section pending a final judgment or decree, the conclusion of any appeal therefrom, and sixty days; and if the final determination shall be adverse to the United States, the United States nevertheless may retain such possession or control of the real property or of any part thereof as it may elect, upon payment to the person determined to be entitled thereto of an amount which upon such election the district court in the same action shall determine to be just compensation for such possession or control.

The City argues that, because the compensation awarded the County was based on the cost of replacing or providing substitute roadways for the change in traffic patterns, the County should be compelled to provide such roadways. The City's argument, however, fails to link the measure of damages with any legal requirement that the judgment proceeds be spent for a specific purpose. Although the federal court in explaining its award discussed the cost of providing alternative traffic ways, the final judgment was general and simply awarded a dollar amount. The judgment did not direct the County to use the proceeds in any particular manner. The City cites no authority for its position that the County, having been granted a general judgment, can be compelled to spend the money for a specific purpose or that the County can even be compelled to spend the money in accordance with its evidence of damages.

RCW 46.68.070[3] creates a permanent motor vehicle fund to be used for "proper road, street, and highway purposes." The money that accrues in the motor vehicle fund from the motor vehicle fuel tax and special fuel tax is then distributed under RCW 46.68.090. And within each county there is a "county road fund." RCW 36.82.010. "Any funds which accrue to any county for use upon county roads, shall be credited to and deposited in the county road fund." RCW 36.82.010. Special funds, such as the county road fund, "have been said to be held in trust for the designated purposes." 4 CHESTER J. ANTIEAU, ANTIEU'S LOCAL GOVERNMENT LAW § 43.11 (1991). But every county also maintains a "current expense fund to which shall be credited all taxes levied for that purpose and all fees collected, fines assessed, and forfeitures adjudged in the county the proceeds of

---

[3] RCW 46.68.070 states:

There is created in the state treasury a permanent fund to be known as the motor vehicle fund to the credit of which shall be deposited all moneys directed by law to be deposited therein. This fund shall be for the use of the state, and through state agencies, for the use of counties, cities, and towns for proper road, street, and highway purposes, including the purposes of RCW 47.30.030.

which have not been specifically allocated to any other purpose." RCW 36.33.010. Here, the federal court placed no limits on the use of the judgment. Presumably, the money went to the County's general fund authorized by RCW 36.33.010. But even if the money went to the county road fund, the County was not obligated to spend the funds on the specific projects contemplated by the loss of Woodbrook Road. The City, therefore, has not shown that the County is obligated to spend the judgment money in any specific way.

## III. Constructive Trust

The City contends that it should be the beneficiary of a constructive trust consisting of the judgment proceeds awarded to the County. There is no legal basis, however, for imposing a constructive trust for money awarded to the County without restrictions on its use.

■■ A constructive trust is an equitable remedy "imposed when there is clear, cogent, and convincing evidence of the basis for impressing the trust." *Baker v. Leonard*, 120 Wn.2d 538, 547, 843 P.2d 1050 (1993). Courts will typically impose a constructive trust in instances of "fraud, misrepresentation, bad faith, or overreaching." *In re Marriage of Lutz*, 74 Wn. App. 356, 366, 873 P.2d 566 (1994). A constructive trust may also arise "where the retention of the property would result in the unjust enrichment of the person retaining it." *Scymanski v. Dufault*, 80 Wn.2d 77, 89, 491 P.2d 1050 (1971). Furthermore, a constructive trust can arise absent any intention by the parties to create a trust. *Thor v. McDearmid*, 63 Wn. App. 193, 206, 817 P.2d 1380 (1991). But the City did not exist at the time the money judgment was paid, and the City does not cite any authority for the proposition that a trust can arise for a beneficiary that did not exist when the trust proceeds came into existence.

Nevertheless, the City contends that "[f]or Pierce County to profit at the detriment (safety and access) of the citizens it once governed is patently unfair." The County, however,

did not profit at the expense of the citizens of the City. When the City incorporated, Woodbrook Road was not a county road. The United States had already taken possession of it. Both the judgment and settlement agreement occurred *before* Lakewood voted to incorporate. At the time the County was awarded the money, the citizens of Lakewood were part of the County. And the County as an *entity* received the money, not any subset of citizens. Thus, there is no "clear, cogent, and convincing evidence of the basis for impressing the trust." *Baker*, 120 Wn.2d at 547.

We affirm.

BRIDGEWATER and HUNT, JJ., concur.

Review granted at 142 Wn.2d 1024 (2001).